IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CARLOTTA J. WILLIAMS,**

    **Plaintiff,**

v.

    Civil Action 2:20-cv-3933
    Judge Michael H. Watson
    Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

    Plaintiff, Carlotta J. Williams,[1] brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 17), and the administrative record (ECF No. 11). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

---

[1] Plaintiff is misidentified in the title of her Statement of Specific Errors as Ashley N. Williams. (*See* ECF No. 12 at PAGEID # 1181.)

1

## I. BACKGROUND

Plaintiff protectively filed her application for benefits in October 2017, alleging that she has been disabled since October 1, 2016, due to attention deficit disorder, depression, anxiety, stomach removal, acid reflux, migraines, NISSAN surgery and hypothyroidism. (R. at 193-99, 274.) Plaintiff's application was denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). On July 11, 2019, ALJ Victoria Ferrer (the "ALJ") held a video hearing at which Plaintiff, represented by counsel, appeared and testified. (R. at 31-65.) The ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act on September 11, 2019. (R. at 12-30). On September 22, 2019, Plaintiff filed a Request for Review of Hearing Decision Order. (R. at 190-192.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-6.) This matter is properly before this Court for review.

## II. HEARING TESTIMONY

The ALJ summarized Plaintiff's statements to the Agency and her relevant hearing testimony:

> [Plaintiff] testified that she is unable to work due to residual effects of her abdominal surgery in October 2016. She alleged that she experiences nausea and some periodic abdominal pain that lasts up to 20 minutes. [Plaintiff] also stated that she has to use the restroom two to three times a day on good days and 6-8 times a day on bad days. She is also unable to lift heavy objects, indicating that she is only able to lift a 150-ounce container of detergent. However, [Plaintiff] did acknowledge that prescription medications reduced her nausea. [Plaintiff] also alleged that she was diagnosed with fibromyalgia and experiences fatigue and soreness throughout her body. In addition, she testified that she suffers from attention deficit disorder (ADD), depression, and anxiety. However, she noted that prescription medications were effective in controlling symptoms associated with her mental impairments. [Plaintiff] also acknowledged that she previously received psychiatrist counseling, but was not currently seeing a psychiatrist. In her written account, [Plaintiff] alleged that she suffers from nausea, dumping syndrome, and fatigue. As a result, [Plaintiff] indicated that she has difficulty

> performing her duties as a server, such as picking up plates and carrying buckets of ice or silverware. She further noted that due to her symptoms she has difficulty dressing, bathing, caring for her hair, feeding herself, and using the toilet. In addition, [Plaintiff] reported limitations in lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and climbing stairs. However, [Plaintiff] acknowledged that she is capable of preparing meals, doing laundry, washing a small amount of dishes, driving, shopping for groceries, and performing light cleaning such as wiping down the sink and cleaning the toilet.
>
> \*\*\*
>
> [Plaintiff] continues to work as a server, where she is tasked with writing down the orders of customers and serving their food. [Plaintiff] also testified that she is able to recall the orders of her regular customers without writing them down.

(R. at 21-23 (internal citations omitted).)

### III. RELEVANT MEDICAL RECORDS

The ALJ summarized the relevant medical records concerning Plaintiff's alleged impairments:

> [Plaintiff]'s alleged impairments are not supported by medical records to the extent alleged. [Plaintiff] has alleged that she suffers from the effects of undergoing a gastrectomy and esophagojejunostomy in October 2016. However, following the procedure, [Plaintiff] reported doing well in December 2016. In January 2017, treatment records further showed that the [Plaintiff] reported mild pain, diarrhea, and some nausea after meals, but acknowledged improvement and returning to normal activities. She also noted that Zanaflex seemed to be helping in relieving her symptoms. There is no further evidence in the record that [Plaintiff] received any additional treatment or expressed any significant complaints associated with her surgery.
>
> \*\*\*
>
> In addition, [Plaintiff] was diagnosed with fibromyalgia. However, while the record noted that [Plaintiff]'s fibromyalgia occurred constantly and was fluctuating, treatment records indicated that the severity level was only at a three.
>
> [Plaintiff] was also diagnosed with anemia. A CT scan of [Plaintiff]'s chest taken in October 2016 noted that a visualization of the interventricular septum of the heart suggested underlying anemia. Nonetheless, there is no evidence contained in the record that [Plaintiff] reported complications or complaints due to her anemia.

3

> As for her mental health impairments, [Plaintiff] was diagnosed with attention deficit disorder, Bipolar disorder, and anxiety. *** A range of mental status examinations also demonstrated that the [Plaintiff] was oriented to person, place, and time. She also displayed normal mood with an appropriate affect; intact judgment and insight; fair attention and concentration; and possessed an average fund of knowledge and normal memory. Furthermore, during examinations [Plaintiff] has been polite, pleasant, and cooperative, with an appropriate mood and affect.

(R. at 22-23 (internal citations omitted).)

### IV. ADMINISTRATIVE DECISION

On September 11, 2019, the ALJ issued her decision. (R. at 12-30.) First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2023. (R. at 17.) At step one of the sequential evaluation process, the ALJ found that Plaintiff did not engage in substantially gainful activity since October 1, 2016, the alleged onset date. (*Id.*) The ALJ found that Plaintiff had the severe impairments of fibromyalgia, attention deficit disorder, bipolar disorder, anxiety, status post gastrectomy and esophagojejunostomy, and anemia. (*Id.*) She further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18.) At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that [Plaintiff] had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except [Plaintiff] can lift and carry up to ten pounds, sit for six hours, stand/walk for two hours, and push and pull to the same extent as lift and carry. [Plaintiff] can occasionally climb ramps, stairs, ladders, ropes, or scaffolds; occasionally work in high exposed places; and occasionally stoop, kneel, crouch, and crawl. [Plaintiff] is able to understand, remember and carry out simple and detailed instructions.

(R. at 20-21.) As for medical opinions, the ALJ found:

4

> State agency examiners evaluated [Plaintiff] both initially and on reconsideration. At the initial level, the State agency opined that [Plaintiff] could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk about six hours in an eight-hour workday; and sit about six hours in an eight-hour workday. The State agency also found that [Plaintiff] would be limited to frequently climbing ramps and stairs; and occasionally climbing ladders, ropes, and scaffolds. Furthermore, [Plaintiff] was found to be moderately limited in her ability to carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and respond appropriately to changes in the work setting. These findings were affirmed on reconsideration. The findings of State agency at both levels of review were only somewhat persuasive, as they were only partially consistent with the objective medical evidence. The State agency concluded that [Plaintiff] was moderately limited in her ability to carry out detailed instructions; however, she is employed as a server and writes down the orders of customers. She also testified that she is able to recall the orders of her regular customers. Thus, she is able to perform detailed tasks. Furthermore, the evidence presented at the hearing and the medical evidence of record indicated that [Plaintiff] should be further limited to the sedentary exertional level with greater postural limitations than were recognized by the State agency.

(R. at 23-24 (internal citations omitted).)

Relying on the VE's testimony, the ALJ found that Plaintiff is unable to perform her past relevant work as a waitress or merchandise marker. (R. at 24.) Considering her age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as an information clerk, order clerk or assembler. (R. at 24-25.) She therefore concluded that Plaintiff has not been disabled under the Social Security Act since, October 1, 2016. (R. at 25-26.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

5

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff puts forth two assignments of error: that the ALJ's RFC determination is not supported by substantial evidence, and that the ALJ failed to recognize, and thus consider, Plaintiff's lumbar disc disease as a medically determinable impairment. (ECF No. 12 at PAGEID ## 1184-1191.) First, Plaintiff argues that "[t]he substantial evidence of record does []

6

not support a finding that [Plaintiff] can perform sustained work activities," and that "the ALJ's RFC does not adequately account for [Plaintiff's] limitations in concentration, persistence, and pace." (*Id.* at PAGEID ## 1184-1189.) Specifically, Plaintiff argues that the ALJ failed to acknowledge or accommodate Plaintiff's "fatigue, weakness and frequent need to use the restroom" in her RFC, and that the ALJ also failed to incorporate the State agency psychologists' limitations in concentration, persistence, and pace. (*Id.*) Plaintiff additionally argues that the ALJ erred at step two of the disability determination because the ALJ "failed to even recognize [Plaintiff's] lumbar disc disease in any capacity, let alone, as a medically determinable impairment, erroneously failing to give the substantiated impairment any consideration." (*Id.* (underline emphasis in original).)

In response, the Commissioner argues that "it is immaterial which impairments or how many impairments an ALJ designates as severe [at step two] since the standard used at step two of the sequential evaluation is merely a *de minimis* screening device to dispose of groundless claims." (ECF No. 17 at PAGEID # 1207.) The Commissioner further argues that "this record is a particularly poor fit for Plaintiff's argument for at least three reasons: (1) the ALJ designated other physical impairments as severe (and assessed a highly restrictive RFC in view of those impairments), and Plaintiff has made no showing that a designation of her lumbar disc disease as severe would have changed the ALJ's analysis of her physical limitations; (2) the only treatment for this impairment occurred two years prior to Plaintiff's alleged onset date; and (3) the ALJ had the benefit of two state agency medical findings that considered the relevant treatment records." (*Id.* at PAGEID # 1208.) For these reasons, the Commissioner contends that any alleged error, even if substantiated, should be deemed harmless. (*Id.*)

7

The Commissioner also responds by arguing that Plaintiff's argument regarding the ALJ's alleged failure to acknowledge or accommodate Plaintiff's fatigue, weakness, and frequent need to use the restroom "is woefully underdeveloped and should be deemed waived" because Plaintiff merely lists a set of symptoms and offers a string citation to a wide variety of records containing numerous different clinical impressions. (*Id.* at PAGEID # 1211.) The Commissioner further argues that Plaintiff's argument "is belied by the text of the [ALJ's] decision," as the ALJ "explicitly acknowledged all of the reported symptoms identified in Plaintiff's brief" but still found those symptoms to be "not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at PAGEID # 1212.) With regard to Plaintiff's limitations regarding her concentration, persistence, and pace, the Commissioner argues that "the core flaw in Plaintiff's argument . . . is her failure to show *why* greater limitations are justified," and that the objective and subjective record evidence both support the limitations set forth in the ALJ's RFC. (*Id.* at PAGEID ## 1216-1221.)

Plaintiff did not file a Reply brief. Accordingly, the matter is ripe for judicial review. The Court will analyze each of Plaintiff's arguments separately.

**A.**     **Substantial Evidence Supports the ALJ's RFC Finding, Including as to Plaintiff's Limitations in Concentration, Persistence, or Pace.**

As to Plaintiff's first argument, the determination of a claimant's RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:08-cv-411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). An ALJ must explain how the evidence supports the limitations that he or she sets forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory

8

>findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *7 (internal footnote omitted). The ALJ must also consider all medical opinions he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c).

"[T]here is no regulatory requirement that an ALJ adopt every facet of a particular medical opinion in formulating an RFC, so long as the record as a whole supports the RFC actually determined by the ALJ, and she adequately explains her analysis in a manner sufficient to allow review." *Kincaid v. Comm'r of Soc. Sec.*, No. 1:16-CV-736, 2017 WL 9515966, at *3 (S.D. Ohio June 12, 2017), *report and recommendation adopted*, No. 1:16CV736, 2017 WL 4334194 (S.D. Ohio Sept. 30, 2017). A disagreement with how the ALJ decided to weigh differing medical opinions "is clearly not a basis for . . . setting aside the ALJ's factual findings." *Id.* (citing *Mullins v. Sec'y of Health & Hum. Servs.*, 836 F.2d 980, 984 (6th Cir. 1987)). Further, "[e]ven where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency [consultant's] opinions verbatim; nor is the ALJ required to adopt the state agency [consultant's] limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) (citations omitted).

Here, the Court finds that the ALJ's decision is supported by substantial evidence. First, the Court completely rejects Plaintiff's first argument, and agrees with the Commissioner that the ALJ "explicitly acknowledged all of the reported symptoms identified in Plaintiff's brief." (*See* R. at 21 (citing Plaintiff's reports of "us[ing] the restroom two to three times a day on good days

and 6-8 times a day on bad days"; being "unable to lift heavy objects"; and "experienc[ing] fatigue and soreness throughout her body"); *contra* ECF No. 12 at PAGEID # 1185 ("The ALJ failed to acknowledge or accommodate Ms. Williams' fatigue, weakness and frequent need to use the restroom in her residual functional capacity discussion and determination.").)  While Plaintiff argues that "it is reasonable to ascertain from the evidence of record and [Plaintiff's] testimony, that her ability to perform substantial gainful activity on a sustained basis was limited," this is not the standard at this stage of the proceedings.  *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *4 (6th Cir. Aug. 10, 2020) ("Even if the record could support an opposite conclusion, we defer to the ALJ's finding because it is supported by substantial evidence, based on the record as a whole.") (internal citations omitted).  Because the ALJ appropriately acknowledged Plaintiff's symptoms and supported her decision with substantial evidence from the record, the Court must defer to the ALJ's RFC as it pertains to Plaintiff's fatigue, weakness and frequent need to use the restroom.  *Id.*

The Undersigned rejects Plaintiff's second argument, regarding Plaintiff's limitations in concentration, persistence, and pace, for similar reasons.  While Plaintiff argues that "the ALJ failed to acknowledge that [Plaintiff] may be unable to stay alert, or work at a consistent pace, even at a simple, unskilled, routine job," the Undersigned disagrees and finds that the ALJ appropriately discussed Plaintiff's limitations at length, based on a thorough review of the entire record:

> As for [Plaintiff's] statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because a review of [Plaintiff's] course and pattern of care showed a fairly routine and conservative set of office visits. **While not every mental and physical examination was normal, many largely were. [Plaintiff] further acknowledged that her prescribed medications were generally effective in managing her symptoms.** In addition; [Plaintiff's] characterization of her symptoms, and the extent to which they limited her was

10

also generally inconsistent with the medical evidence contained in the record. Furthermore, throughout the period that [Plaintiff's] alleged disability, she was able to engage in some activities of daily living, including continuing to work part-time. **While no one factor cited above is dispositive, and each perhaps on its own does not establish anything conclusively, the totality of the facts and circumstances cited above made it difficult to rely heavily on [Plaintiff's] subjective complaints. Consequently, I have relied greatly on the available objective medical evidence of record and the persuasive medical opinion statements.**

\*\*\*

As for her mental health impairments, [Plaintiff] was diagnosed with attention deficit disorder, Bipolar disorder, and anxiety (*see generally* Exhibits 1F/2, 2F/13, 20, 26, & 32, 3F/5 & 9, 4F, 5F/2, 6F/8, 40, & 68, 7F/32, 43, 56, & 72, 8F, 9F/6, & 10F/54 & 94). **However, [Plaintiff] testified that her prescription medications were effective in managing her symptoms** (Hearing). A range of mental status examinations also demonstrated that [Plaintiff] was oriented to person, place, and time (Exhibits 2F/15, 21, 27, & 33, 4F/266, 7F/35, & 8F/8, 32, 41, & 46). **She also displayed normal mood with an appropriate affect; intact judgment and insight; fair attention and concentration; and possessed an average fund of knowledge and normal memory** (*see generally* Exhibits 2F/15, 21, 27, & 33, 3F/25, 34, 43, & 52, 4F, 6F/7-8, 14, 19, 24-25, 29-30, & 59, 7F/46, & 8F/27). Furthermore, during examinations [Plaintiff] has been polite, pleasant, and cooperative, with an appropriate mood and affect (*see generally* Exhibits 1F/3, 2F/15, 21, 27, 33, & 70, 3F, 4F, 5F/5 & 11, 6F, 7F/46, & 8F/27). Moreover, [Plaintiff] continues to work as a server, where she is tasked with writing down the orders of customers and serving their food (Hearing). [Plaintiff] also testified that she is able to recall the orders of her regular customers without writing them down.

As discussed above, **psychical [sic] and mental examinations failed to reveal any significant findings to indicate any greater limitations than provided in the residual functional capacity.** [Plaintiff] has had conservative treatment and has acknowledged that prescribed medications were effective in managing her symptoms (Hearing & Exhibit 8F/5). Nevertheless, [Plaintiff's] pain complaints from fibromyalgia and her status post gastrectomy and esophagojejunostomy were considered in reducing her to sedentary work with additional postural limitations. Her subjective complaints were further considered when reducing her to occasionally working in high exposed places. **I also considered the symptoms of [Plaintiff's] mental impairments as they pertain to her deficits in attention, focus, concentration, persistence and pace, which indicate that she is only able to understand, remember and carry out simple and detailed instructions.**

\*\*\*

11

> In sum, the above residual functional capacity assessment is supported by the objective medical evidence and persuasive opinions above that indicate [Plaintiff] could perform work at the sedentary exertional level with the restrictions listed above. **Further restriction was unwarranted as [Plaintiff] had many normal examinations, she acknowledged that her prescribed medications were generally effective in managing her symptoms, her characterization of her symptoms was not entirely consistent with or supported by the medical records, and she was able to engage in some activities of daily living throughout the period that she alleged disability, including working part-time.**

(R. at 22-24 (emphasis added).)  With this detailed analysis, the ALJ not only cited objective and subjective record evidence in support of her RFC, but she also clearly explained (multiple times) why she opted against further restrictions, including as to Plaintiff's concentration, persistence, or pace.  (*Id.*)

While Plaintiff may have preferred a different RFC than the one determined by the ALJ, the ALJ thoroughly explained the bases for her RFC determination, and the ALJ's explanation enjoys substantial support in the record.  *Dickinson v. Comm'r of Soc. Sec.*, No. 2:19-CV-3670, 2020 WL 4333296, at *11 (S.D. Ohio July 28, 2020), *report and recommendation adopted*, No. 2:19-CV-3670, 2020 WL 5016823 (S.D. Ohio Aug. 25, 2020) (citing *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 649 (6th Cir. 2013); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) ("The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.")).  Under these circumstances, the Court finds no merit to Plaintiff's first statement of error.

**B.    The ALJ Did Not Commit Reversible Error at Step Two by Failing to Recognize Plaintiff's Lumbar Disc Disease as a Medically Determinable Impairment.**

Turning to Plaintiff's second argument, the Undersigned finds that Plaintiff is mistaken that the ALJ's failure to recognize Plaintiff's lumbar disc disease as a medically determinable

impairment at step two of the evaluation process constitutes reversible error. As the Sixth Circuit and this Court have observed several times, step two of the evaluation process is merely meant to "screen out totally groundless claims," and it is well settled that where an ALJ "considers all of a claimant's impairments in the remaining steps of the disability determination, any perceived failure to find additional severe impairments at step two '[does] not constitute reversible error.'" *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 597 (6th Cir. 2018) (citing *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987))); *see also Rosshirt v. Comm'r of Soc. Sec.*, No. 2:19-CV-3280, 2020 WL 4592393, at *3 (S.D. Ohio Aug. 11, 2020) (*"***Even assuming that the ALJ should have discussed plaintiff's alleged [impairment] at step two, any error from this omission was harmless***. Step two is the means by which the Commissioner screens out totally groundless claims, and is a '*de minimis* hurdle[.]'") (emphasis added; internal quotations and citations omitted).

      Here, the ALJ found that Plaintiff had several impairments at step two of the evaluation process, and rightfully proceeded to the remaining steps of the disability determination. (R. at 17-18.) This ends the step two analysis which Plaintiff puts before the Court. Plaintiff, however, believes that the ALJ should have at least considered Plaintiff's lumbar disc disease in the remaining steps of the disability determination. (ECF No. 12 at PAGEID ## 1191 ("The ALJ, here, failed to even recognize Ms. Williams' lumbar disc disease in any capacity, let alone, as a medically determinable impairment, erroneously failing to give the substantiated impairment any consideration.") (underline in original).) Accordingly, for the sake of completeness, the Undersigned also will discuss whether the ALJ should have considered Plaintiff's lumbar disc disease in the remaining steps of the disability determination.

While acknowledging that the ALJ did not discuss Plaintiff's lumbar disc disease, the Undersiged disagrees that the ALJ needed to.  As the Commissioner correctly points out (and to which Plaintiff declined to respond by not filing a Reply brief), there is only one diagnosis of lumbar disc disease in the (1,100+ page) administrative record, and it predates the relevant period by nearly two years.  (*See* R. at 813-814 (referencing Plaintiff's "documented lumbar disc disease," dated November 5, 2014).)  Plaintiff cites a number of documents in the administrative record which purportedly "documents the diagnosis and symptoms of Ms. Williams' lumbar disc disease, including MRI results revealing nerve root impingement and bilateral foraminal stenosis." (ECF No. 12 at PAGEID # 1190 (citing R. at 535, 536, 540, 541, 550, 556, 790, 813-814, 1125).)  Upon review of Plaintiff's citations, however, the Court finds that the record does not support such a finding:

- **R. at 535-536:**  A chart note, dated January 16, 2014, which assesses Plaintiff with lumbago and characterizes Plaintiff's back pain as 1/10 in severity.

- **R. at 540-541:**  A chart note, dated March 20, 2014, which assesses Plaintiff with lumbago and references that Plaintiff was scheduling a MRI and physical therapy.

- **R. at 550:**  An office visit summary, dated August 7, 2014, which references Plaintiff's lumbago, "for which she requests pain management."

- **R. at 556:**  An office visit summary, dated January 29, 2015, which references Plaintiff's lumbago.

- **R. at 790:**  A medical record, dated October 16, 2016, which references back pain.

- **R. at 813-814:**  A medical record from pain specialist Ron P. Linehan, M.D., dated November 5, 2014, which references a "5 year history of progressively increasing low back pain radiating into both lower extremities," reviews an April 10, 2014 lumbar spine MRI which "reveals disc bulging and facet hypertrophy associated with bilateral foraminal stenosis at L4-5 and L5-S1," and opines that "the most likely cause of [Plaintiff's] symptoms is nerve root impingement secondary to her documented lumbar disc disease associated with bilateral foraminal stenosis at L4-5 and L5-S1."

14

- **R. at 1125:** The findings from a September 24, 2018 bone density scan, which showed bone mineral density in Plaintiff's lumbar spine "within the normal range by WHO criteria."

None of these records "document" Plaintiff's lumbar disc disease as Plaintiff contends, beyond the passing reference by pain specialist Dr. Linehan on November 5, 2014. To that end, only two of Plaintiff's cited records postdate October 1, 2016 – the alleged onset of Plaintiff's disability – and neither of those records "clearly supports" a finding that [Plaintiff's] lumbar disc disease exists, let alone is a medically determinable impairment as Plaintiff suggests. The Undersigned also finds it difficult to criticize the ALJ's decision given that from the time she applied for disability benefits in October 2017 through the time of her hearing before the ALJ in July 2019, Plaintiff never claimed to be disabled because of her alleged lumbar disc disease. (*See* R. at 31-65 (Hearing Testimony), 193-199 (Application for Disability Insurance Benefits).)

In sum, Plaintiff has fallen well short of meeting her burden to demonstrate that her alleged lumbar disc disease has been a medically determinable impairment since October 1, 2016. *See* 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled. You must provide evidence showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your case."). Accordingly, Plaintiff's second objection is not well taken.

## VII. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

### VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: October 12, 2021        /s/ *Elizabeth A. Preston Deavers*
                                                           **ELIZABETH A. PRESTON DEAVERS**
                                                           **UNITED STATES MAGISTRATE JUDGE**